# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **TROY T. FOSTER** | **CIVIL ACTION NO. 05-1327-M** |
| **VS.** | **SECTION P** |
| **NURSE PENDERGRASS, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## RULING ON MOTION TO APPOINT COUNSEL AND REPORT AND RECOMMENDATION ON CIVIL RIGHTS COMPLAINT

Before the court is the civil rights complaint (42 U.S.C. §1983) of *pro se* plaintiff Troy T. Foster filed *in forma pauperis* on July 22, 2005, (Document No. 1), and a Motion for appointment of counsel filed by the plaintiff on that same date (Document No. 3). Foster is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is currently incarcerated at the Richwood Correctional Center, Monroe, Louisiana, but he complains of delayed or inadequate medical care while he was incarcerated at the Morehouse Parish Detention Center (MPDC) in September, 2004. Plaintiff named MPDC Nurse Pendergrass and MPDC Warden Tappin as defendants. He prays for damages in the amount of $25,000 for pain and suffering.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

On September 20, 2004, at 6:40 a.m., plaintiff slipped and fell in the shower while he was

a prisoner in the MPDC. Plaintiff injured his left elbow and buttocks when he fell. He was taken to the MPDC medical department and examined by Nurse Pendergrass at 7:50 a.m. He was then transported to the E.A.Conway Hospital in Monroe, Louisiana. [Doc. 1-1, p. 6]

He was ambulatory when he arrived at the E.A.Conway Hospital at approximately 11:00 a.m. Upon arrival, plaintiff complained of pain to his left elbow and tail bone. He described his pain as 8 on a scale of 10. Physical examination revealed that although his left elbow was swollen, he retained good range of motion. Examination of his back revealed no erythema,[1] no swelling, and a good range of motion. An x-ray examination was negative for serious injury. Plaintiff was diagnosed with a contusion to his left elbow.[2] He was given 60 mg of Toradol[3] and discharged at 1:35 p.m. with instructions to take ibuprofen[4] for pain. [Doc. 1-2,

---

[1] Skin redness or inflammation. See Medline Plus, a Service of the National Institutes of Health, and the United States National Library of Medicine at http://www.nlm.nih.gov/medlineplus/ency/article/

[2] A contusion or bruise is an area of skin discoloration. A bruise occurs when small blood vessels break and leak their contents into the soft tissue beneath the skin See Medline Plus, a Service of the National Institutes of Health, and the United States National Library of Medicine at http://www.nlm.nih.gov/medlineplus/ency/article/

[3] Toradol, also known as Ketorolac is used to relieve moderately severe pain, usually pain that occurs after an operation or other painful procedure. It belongs to the group of medicines called non-steroidal anti-inflammatory drugs (NSAIDs). Ketorolac is not a narcotic and is not habit-forming. It will not cause physical or mental dependence, as narcotics can. However, ketorolac is sometimes used together with a narcotic to provide better pain relief than either medicine used alone. See Medline Plus, a Service of the National Institutes of Health, and the United States National Library of Medicine at http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682159.html

[4] Ibuprofen is used to relieve the pain, tenderness, inflammation (swelling), and stiffness caused by arthritis and gout. It isalso used to reduce fever and to relieve headaches, muscle aches, menstrual pain, aches and pains from the common cold, backache, and pain after surgery or dental work. See Medline Plus, a Service of the National Institutes of Health, and the United

p. 1]

On September 22, 2004 plaintiff requested a "sick call." He was seen by Nurse Pendergrass. He complained of continued back pain, head aches, a burning sensation in his legs and sharp shooting pains in his neck. Plaintiff requested a second mattress claiming that such an arrangement had been ordered by the physician at E.A. Conway Hospital.[5] [Doc. 1-1, p. 7]

On September 24, 2004 plaintiff submitted another "sick call." Plaintiff claims that he was not permitted to voice his complaints to Nurse Pendergrass. He claimed to have been suffering pain in his back and sleeplessness. [*id.*]

On September 26, 2004 plaintiff strained while having a bowel movement. Plaintiff was then bedridden because of the pain. Plaintiff missed an unspecified number of meals because he could not get out of bed and Nurse Pendergrass did not make arrangements for him to be provided meals in bed.[6] [*id.*]

On September 22, 2004 plaintiff submitted a formal ARP complaining about the fact that he was not attended to immediately after his fall. He alleged that at least one hour lapsed between the time of his fall and the time he received medical attention. Plaintiff complained of continued pain and suggested that he needed a more thorough examination. This ARP was

---

States National Library of Medicine at
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/

[5] The Medical Records from E.A. Conway Hospital do not confirm this allegation. [See Doc. 1-2, p. 1]

[6] Plaintiff claims that the physician at E.A. Conway Hospital ordered complete bed rest but the Medical Records from E.A. Conway Hospital do not confirm this allegation. [*id.*]

assigned to Nurse Pendergrass for response, and on September 24 she responded, "On 9/20/2004 at approximately 0750 subj was seen by medical office and referred to EACH [E.A. Conway Hospital] for further evaluation. This was not a medical emergency (not life threatening)." The response was accepted by plaintiff. [Doc. 1-1, p. 11]

On September 27, 2004 plaintiff submitted another ARP complaining that he "...was denied a [breakfast] tray by Deputy Hailey..." who told plaintiff that if he was hungry, he should get up and get his food. Sgt. Robinson then refused to discuss the matter with plaintiff who was advised to speak to the Warden or the lieutenant. In the ARP plaintiff admitted that his food trays had been brought to him by his fellow inmates since the date of his accident, but that as a result of this incident he felt "threatened." On September 29, 2004, Nurse Pendergrass responded to the complaint, "9/24/04 subj was seen in medical office at approx 0840 and at that time officers [were] informed to allow someone to bring him his tray..." Again, plaintiff accepted the response. [Doc. 1-1, p. 12]

On October 5, 2004 plaintiff claims to have submitted an Administrative Remedies Procedure (ARP) grievance complaining about Nurse Pendergrass's neglect. He also complained about the lack of signs and rails in the showers and the lack of a medical emergency response team at the facility. He requested copies of all sick call requests and medical reports. Plaintiff claimed that this ARP was not reviewed. [Doc. 1-1, p. 8.]

On December 9, 2004 plaintiff was transferred to Richwood Corrections Center. [*id*.]

On unspecified dates, after plaintiff's transfer to the Richwood Corrections Center, he purportedly sent grievances to the Secretary of the Louisiana Department of Public Safety and Corrections. Plaintiff complained, "Due to Nurse Pendergrass being upset about the fact that she

4

was called in early to tend to me, I was not afforded an extra mattress nor was the proper documentations [sic] forwarded to security to allow my meals to be brought to me while on bedrest." [Doc. 1-1, p. 9] In another grievance purportedly forwarded to the Department, plaintiff complained that he had to "lay on the shower floor for 30 minutes..." after his fall on September 20 because there was no nurse or emergency medical care team to attend to him. He also complained, "After days of complaining of pain, discomfort, and sleepless nights (9-22-04, 9-24-04, 9-27-04) and not being allowed a breakfast on 9-27-04 due to my condition and Nurse Pendergrass neglect to make written provisions for staff." Plaintiff then opined, "My recovery from my fall was negated due to the deliberate indifferent attitude shown by Nurse Pendergrass..." [Doc. 1-1, p. 10]

## LAW AND ANALYSIS

### 1. Request for Counsel[7]

Plaintiff seeks court-appointed counsel to assist him in the prosecution of his civil rights case filed pursuant to 42 U.S.C. §1983. [See Doc. 3] Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to <u>request</u> that an attorney represent an indigent plaintiff. See *Mallard v. United States District Court for*

---

[7]As this is not one of the motions excepted in 28 U.S.C. §636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

5

*the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) (federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.)

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242.

Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

In his civil rights complaint, plaintiff alleges that prison officials have been deliberately indifferent to his serious medical needs. The claim is typical of those often asserted in civil rights

6

litigation and is not complex. Further, as is shown hereinafter, plaintiff has adequately stated his claim and supported his claims with all of the facts necessary for the court to make a prompt resolution of this matter. As is shown hereinafter, it appears unlikely that the appointment of counsel would be of any benefit to the petitioner.

**Accordingly, plaintiff's request for appointment of counsel is DENIED at the present time as the allegations contained in the complaint and plaintiff's motion do not demonstrate "exceptional circumstances" which would warrant the appointment of counsel.**

2. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint and the copies of his ARP Grievances specifically detail his theories of liability with respect to each named defendant. The thoroughness of the complaint convinces the court that plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

### 3. Medical Care

The pleadings do not definitively establish whether plaintiff was a pretrial detainee or a convicted inmate when the complained of events occurred. The constitutional right of a pretrial

detainee to medical care arises from the due process guarantees of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir.2000). That right is violated only if the defendants act with deliberate indifference to a substantial risk of serious medical harm which results in injury. *Id.* Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. *Id.* Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.*

The same test is applied under an Eighth Amendment analysis appropriate to the resolution of a convict's medical care claim. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)

Thus, plaintiff can establish an actionable constitutional violation only if he alleges facts tending to establish that the defendants were deliberately indifferent to his serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Plaintiff has not, nor can he, make such a showing.

Deliberate indifference in the context of the failure to provide reasonable medical care to either a pretrial detainee or a convict means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Id.* at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference

9

encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. The facts alleged by the plaintiff establish that he was injured on September 20 at 6:40 a.m. He was seen by Nurse Pendergrass at 7:50 a.m., a little more than one-hour after his fall. He was transported to E.A.Conway Hospital and admitted and screened at approximately 11:00 a.m. He was x-rayed at the hospital and otherwise examined. No bruises were observed on his back and he was observed to have a full range of motion. The diagnosis upon release was left elbow contusion and the only written orders with respect to this diagnosis called for the administration of ibuprofen, an over-the-counter pain reliever. [Doc. 1-2]

Plaintiff requested "sick calls" on September 22, 24, and 26 and, by his own admission was seen by the Nurse after each request. He submitted two ARP grievances on September 22 and September 27 and each was answered within two days of the submission. On each occasion plaintiff <u>accepted</u> the response of Nurse Pendergrass, even though he had the option to reject the response and appeal his grievance to a higher authority. Plaintiff claims to have filed an ARP on October 5, 2005, but he provides no documentary evidence to support this allegation.

Plaintiff has not shown that Nurse Pendergrass was aware of facts from which an inference of substantial risk of serious harm could be drawn; nor has he shown that she actually drew such an inference; nor that her response to plaintiff's complaints indicated that she

10

subjectively intended that harm occur to the plaintiff. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001). The record submitted by the plaintiff establishes only that his elbow was bruised. There was no other objective evidence of injury. The medical evidence submitted by the plaintiff does not reveal that he was ever subject to a "substantial risk of serious harm." Had plaintiff been in the "free world" it is unlikely that he would have received more attention as a result of these minor injuries.

Further, notwithstanding plaintiff's statements to the contrary, the E.A. Conway Medical Record set forth no other restrictions or recommendations with regard to plaintiff's continued treatment. [Doc. 1-2] There is no indication that Nurse Pendergrass disregarded the treatment plan recommended by plaintiff's treating physician.

In addition, whether or not Nurse Pendergrass "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Finally, it should be noted that plaintiff claims that he missed one meal as a result of his physical condition and inadequate attention to his medical needs. The fact that an inmate or detainee misses one meal does not necessarily implicate the detainee or inmates's constitutional rights. See *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir.1999); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986); see also *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir.1998) ("Missing a

mere one out of every nine meals is hardly more than that missed by many working citizens over the same period.").

In short, plaintiff's claims concerning the denial of adequate medical care are frivolous and dismissal on that basis is recommended.

### 4. Exhaustion

Finally, plaintiff's allegations concerning exhaustion of available administrative remedies are ambiguous or contradictory at best. He claims to have exhausted administrative remedies up to the level of the Secretary of the Department of Public Safety and Corrections, and he has provided two documents purporting to be appeals to the Secretary from the denial of ARP's which were submitted to the administration at the MPDC.

Most institutions employ a multi-staged procedure which requires an inmate to appeal negative decisions to progressively higher authorities. Further, since plaintiff was apparently an inmate in the legal custody of the Louisiana Department of Public Safety and Corrections; he was obliged to ultimately appeal adverse decisions of the jail administration to the Secretary of the Department as provided by the law of Louisiana. (Administrative remedies procedures have been adopted by the Louisiana Department of Corrections, sheriff's maintaining parish jails or correctional centers, and private corporations maintaining correctional centers. See LSA R.S. 15:1171 *et seq*.; 22 LA ADC Pt. I, § 325(LAC 22:I.325); LR 28:857 (April 2002) (28:4 La.Reg. 857)).

Here, the evidence submitted by the plaintiff establishes that he did not appeal or reject the responses he received from Nurse Pendergrass, but instead, accepted her responses. [Doc. 1-1, pp. 11-12] He therefore had no grievance to appeal either to either the MPDC administration

or the Secretary of the Department of Public Safety and Corrections.

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e(a), which makes the exhaustion requirement mandatory in prison conditions cases, provides as follows:

> (a) Applicability of Administrative Remedies--No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In short, plaintiff could not have exhausted his administrative remedies since he accepted the responses provided by the First Step ARP responder. If the claims were not exhausted, plaintiff's complaint is subject to dismissal.

Nevertheless, since it is apparent that plaintiff's claims are frivolous, it is deemed more appropriate to dismiss the complaint on that basis rather than on the basis of plaintiff's apparent failure to exhaust administrative remedies. In the event that plaintiff files objections to this Report and Recommendation as provided below, he should include with his objection proof that he fully exhausted administrative remedies by filing grievances with the Secretary of the Louisiana Department of Public Safety and Corrections prior to filing suit.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 19th day of October, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE